IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

───────────────────────────────────────────────

MARQUITTA B.,                       )
                                    )
      Plaintiff,                    )
                                    )
v.                                  )        No. 23-cv-1276-TMP
                                    )
COMMISSIONER OF SOCIAL SECURITY )
ADMINISTRATION,                     )
                                    )
      Defendant.                    )
                                    )

───────────────────────────────────────────────

ORDER AFFIRMING THE COMMISSIONER'S DECISION
───────────────────────────────────────────────

On December 20, 2023, Marquitta B. ("Plaintiff") filed a complaint seeking judicial review of a social security decision.[1] Plaintiff seeks to appeal a final decision of the Commissioner of Social Security ("Commissioner") denying her application for Title II and Title XVI disability benefits. (ECF Nos. 1, 15.) For the following reasons, the decision of the Commissioner is AFFIRMED.

I.    BACKGROUND

On December 3, 2020, Plaintiff filed her application for disability insurance benefits under Title II and supplemental security income under Title XVI of the Social Security Act (the

───────────────────

[1]After the parties consented to the jurisdiction of a United States magistrate judge on January 25, 2024, this case was referred to the undersigned to conduct all proceedings and order the entry of a final judgment in accordance with 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73. (ECF No. 10.)

"Act"), 42 U.S.C. §§ 404-434.[2] (ECF No. 9 at PageID 34.) This is Plaintiff's second application for benefits, having previously filed an application on December 15, 2017, that was ultimately denied by an Administrative Law Judge ("ALJ") on February 28, 2020. (Id.) Plaintiff was born on April 3, 1989, and she alleges that her disability began on March 1, 2007; however, in light of her previously denied application, Plaintiff's application was only evaluated for disability from February 29, 2020 onwards. (Id.)

Regarding the instant application, Plaintiff's claim was initially denied on June 24, 2021. (Id.) Her request for reconsideration was then denied on September 23, 2022. (Id.) Plaintiff requested a hearing before an ALJ on October 28, 2022. (Id.) The hearing was held telephonically before ALJ Shannon Heath on April 11, 2023. (Id.) ALJ Heath issued her written decision denying benefits on May 11, 2023. (Id. at PageID 34-45.) Plaintiff then filed her request for review with the Appeals Council on July 5, 2023, which was denied on November 14, 2023. (Id. at PageID 17-19, 23.) Plaintiff appealed the matter to this court on December 20, 2023, where the May 11, 2023 decision represents the final decision of the Commissioner. (ECF No. 1.)

---

[2]Other documents within the record indicate that the application was completed on December 4, 2020. (See ECF No. 9 at PageID 254.) While this date is immaterial for the resolution of this matter, the undersigned adopts the December 3 date because the Administrative Law Judge used that date in her decision.

Plaintiff alleges that she is disabled because of high blood pressure, lupus, diabetes, high cholesterol, acid reflux, thyroid problems, and back problems. (Id. at PageID 96.) After considering the record and the testimony given at the hearing, ALJ Heath used the Act's required five-step analysis to conclude that Plaintiff is not disabled for the purposes of receiving Title II and XVI benefits. (Id. at PageID 34-45.) Before proceeding to the first step, ALJ Heath found that Plaintiff met the insured status requirements of the Act through June 30, 2021. (Id. at PageID 37.) At the first step, ALJ Heath then found that Plaintiff had not engaged in substantial gainful activity since February 29, 2020. (Id.)

At the second step, ALJ Heath found that Plaintiff had the following severe impairments: diabetes mellitus, obesity, post-traumatic stress disorder, major depressive disorder, and personality disorder. (Id.) Judge Heath found that several of Plaintiff's alleged impairments were not severe. She explained that "[co]ncerning [Plaintiff's] contention of disability due to high blood pressure and ITP, the record fails to show they more than minimally affects functioning":

> The record shows no objective evidence of ischemia, weakness on exertion, cardiac related shortness of breath, or paroxysmal nocturnal dyspnea. The objective evidence also fails to show pulmonary congestion, tachypnea, cardiac gallop, carotid distension or edema. [Plaintiff} has not been diagnosed with end organ damage or stroke. [Plaintiff] has not required emergency

- 3 -

department treatment or hospitalization for any cardiac
related concern. She saw no related specialist on an
ongoing basis. EKG on December 13, 2022 was normal (C6F
at 3). Thus, the undersigned finds these medically
determinable impairments nonsevere.

(Id. at PageID 37.)

ALJ Heath also found that "[w]hile the record also establishes
hyperlipidemia and thyroid disorder, the record fails to show they
more than minimally affects functioning." (Id.) She elucidated:

The record is absent objective evidence of
atherosclerosis, coronary artery disease or stroke
during the period at issue. [Plaintiff] required no
ongoing cardiovascular monitoring. The record fails to
show related memory problems, trouble thinking clearly,
stiffness, swelling, abnormal voice, or hearing
problems. [Plaintiff] has not been diagnosed with
related osteoporosis or fractures, abnormal calcium
levels in blood, tetany or related muscle spasms.
Thyroid disease is mild (C2F at 1). Thus, the undersigned
finds these impairments are nonsevere.

(Id. at PageID 37-38.)

Concerning Plaintiff's alleged lupus, ALJ Heath found that
she "has no medically determinable impairment of lupus." (Id. at
PageID 38.) She explained that "testing and examination on January
4, 2021 revealed no active systemic autoimmune disease (C1F at 2).
While low titer ANA was positive, clear evidence of CTD/systemic
lupus erythematosus was not found (id at 2)." (Id.) ALJ Heath also
found that Plaintiff's gastroesophageal reflux disease was non-
severe. (Id.) She explained that "the record fails to show it more
than minimally affects functioning. The record is absent objective
evidence of esophagitis, significant malnutrition or weight loss

- 4 -

or gastrointestinal hemorrhaging requiring blood transfusions. The record shows [Plaintiff] has remained obese. Gastro-esophageal reflux disease is mild (C2F at 11)." (Id.)

Finally, ALJ Heath concluded that "the record contains no diagnostic studies or ongoing abnormalities related to a spine impairment. Findings on examination were generally unremarkable. Thus, the undersigned finds [Plaintiff] has no severe medically determinable back impairment." (Id.)

At the third step, ALJ Heath found that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926)." (Id.) She explained:

> The medical evidence fails to show that [Plaintiff]'s impairments are of such severity that they meet or medically equal any listed impairment described in the "Listing of Impairments" (Appendix 1, Subpart P of Regulation No. 4). Specifically, the undersigned has considered the criteria required by 1.00 and 9.00 but found that none of [Plaintiff]'s impairments (whether considered singly or in combination) are attended with the specific clinical signs and diagnostic findings required to meet or equal the requirements set forth in this or any other listing. No acceptable medical source designated to make equivalency findings has concluded that [Plaintiff]'s impairment(s) medically equal a listed impairment.

(Id.)

ALJ Heath also found that Plaintiff's "mental impairments, considered singly and in combination, do not meet or medically equal the criteria of listings 12.04, 12.08, and 12.15." (Id.) She explained:

> In understanding, remembering or applying information, [Plaintiff] has a moderate limitation. The record shows [Plaintiff] has an 8th grade education via regular education coursework (C2E). The medical evidence of record shows no cognitive decline. Memory is intact, orientation is X4, and intellect is average (C8F at 66,75, 84, 94, 113, and 122). Nonetheless, mental health related signs and symptoms that can reasonably be expected to moderately affect functioning in this area.
>
> In interacting with others, [Plaintiff] has a moderate limitation. [Plaintiff] reports she does not like dealing with neighbors or people. The medical evidence of record shows no ongoing behavior abnormalities when seen. The record shows [Plaintiff] lives with a boyfriend and parent (C3E). She also has a friend take her places. While she contends dislike of others, the record shows she was able to take custody of a nephew and apply to be his foster parent, consistent with no greater than moderate limitation in this area.
>
> In concentrating, persisting or maintaining pace, [Plaintiff] has a mild limitation. the medical evidence of record shows stable mental health related findings. The record shows [Plaintiff] can apply for a job, attend job related orientation, drive, pay bills, and shop in stores, consistent with no more than mild limitation in this area.
>
> As for adapting or managing oneself, [Plaintiff] has experienced a mild limitation. The record is absent evidence of emotional lability, inappropriate behavior, or need for intensive mental health therapy secondary to decompensating event(s). The medical evidence of record shows no behavioral problems when seen. The record shows [Plaintiff] can handle self-care, personal hygiene, activities of daily living and care of a nephew.

> Because [Plaintiff]'s mental impairments do not cause at
> least two "marked" limitations or one "extreme"
> limitation, the "paragraph B" criteria are not
> satisfied.
>
> With regard to the "paragraph C" criteria, the record
> fails to show a "serious and persistent" mental disorder
> of 2 years duration with evidence of medical treatment,
> mental health therapy, psychosocial support(s), or a
> highly structured setting(s) that is ongoing and that
> diminishes the symptoms and signs of the mental disorder
> with evidence of marginal adjustment defined as minimal
> capacity to adapt to changes in [Plaintiff]'s
> environment or to demands that are not already part of
> [Plaintiff]'s daily life. Thus, the record fails to
> establish the presence of the "paragraph C" criteria.

(Id. at PageID 38-39.)

ALJ Heath then considered Plaintiff's residual functional capacity ("RFC"), finding that Plaintiff could "perform light work as defined in 20 CFR 404.1567(b) and 416.967(b)."[3] (Id.) But ALJ Heath found that Plaintiff had certain limitations: "[she] can understand, remember, and carry out simple and detailed, not complex tasks; maintain concentration, persistence and pace for such tasks with customary breaks spread throughout the day; interact appropriately with supervisors and coworkers; occasionally interact with the public; and adapt to routine changes

---

[3]Pursuant to 20 C.F.R. § 404.1567(b) and § 416.967(b), light work "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." Additionally, light work includes jobs "requir[ing] a good deal of walking or standing, or [that] involve[] sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. §§ 404.1567(b), 416.967(b).

within this type of work setting." (Id. at PageID 39-40.) Summarizing the medical records and Plaintiff's testimony, ALJ Heath wrote:

> [Plaintiff] alleges an inability to work due to high blood pressure, lupus, diabetes, high cholesterol, acid reflux, thyroid problems, and back problems (C2E). She contends these conditions cause pain or other symptoms and affect lifting, squatting, bending, standing, reaching, walking, sitting, kneeling, talking, stair climbing, seeing, memory, completing tasks, concentration, understanding, following instructions, using hands and getting along with others (C2E, C3E and C6E).
>
> At the hearing, [Plaintiff] testified she is 5'5" and weighs 200 pounds. She does not drive but has driven in the past. She feels disabled because she cannot keep up, gets dizzy, and has motion sickness. She is dizzy every day. Her joints hurt. Her left knee is swollen. She can barely walk. Her back locks up, gets stiff, and causes excruciating pain. She cannot get her blood sugar down. She does not get mental health counseling due to lack of transportation. Mood medication makes her tired. Her friend helps at home, helps her in/out of the car, and takes her places. She meditates with music. She can manage personal care.

(Id. at PageID 40.)

ALJ Heath was "not persuaded by [Plaintiff]'s allegation that the severity of functional limitation imposed by h[er] impairments precludes the performance of all work." (Id.) She explained:

> Regarding physical impairments, the medical evidence of record shows generally routine medical care with stable findings on examination without the need for ongoing specialized treatment, emergency department treatment, or hospitalization. Records from County Community Health revealed ongoing routine medical care for the above medically determinable impairment with generally negative findings on examination. When seen on October 14, 2020, [Plaintiff] denied any dizziness despite being

- 8 -

out of blood pressure medication (C3F at 22-24). Examination on September 2, 2020 revealed only hypoactive bowel sounds (C2F at 32). Examination on October 23, 2020 revealed rash on arm but no other abnormality (C2F at 19). Psychiatric exam was normal (id at 20).

When seen at County Community Health Center on January 21, 2021 [Plaintiff] had no mental, neurologic or cardiovascular complaints or findings (C2F at 5 and 7). HgbA1c was 7.8 (id at 10). When seen on April 28, 2021, diabetes mellitus was stable and physical and psychiatric exams were unremarkable (C2F at 11 and 13).

When seen on July 1, 2021, diabetes mellitus, hypertension, gastro-esophageal reflux disease, anxiety and depression were all reportedly well controlled (C4F at 7). [Plaintiff] had no physical concerns (id at 8). Physical and psychiatric exams were normal (id at 9). Examinations on October 12, 2021 and March 24, 2022 was essentially normal (C4F at 12 and C5F at 6). When [Plaintiff] returned for preventative counseling on December 13, 2022, she had no system complaints including diarrhea, vomiting, anxiety, depression, joint swelling, muscle weakness, chest pain, or gait disturbance (C6F at 6). Body mass index 36.04 (id at 6).

When examined by Peter Gardner MD on March 1, 2023 [Plaintiff] was obese but in no distress (C7F at 2). Abdomen was soft and nontender, neurologic was without focal deficit, and heart was of regular rate and rhythm without murmur (id at 2).

Regarding mental impairments, the record shows generally stable findings without need for emergency department treatment or hospitalization. Mental status examination on October 14, 2020 revealed good appetite, pleasant mood, and intact attention, memory, and concentration (C2F at 29-30). Intelligence was average (C3Fd at 30). Thoughts were appropriate yet with paranoia and hallucinations (id at 30). When seen on November 25, 2020, [Plaintiff] was doing okay despite not taking medication as prescribed (id at 10). She has already cooked most of her holiday dishes (id at 10). When seen the following month, [Plaintiff] was very pleasant, full of laughter, and out shopping with her boyfriend (C3F at 12). (C3F at 25).

- 9 -

Examinations on January 7, 2021, March 4, 2021 and March 25, 2021 revealed no suicidal/homicidal ideation (C3F at 37-38, 46 and 55). Mental status examinations repeatedly revealed pleasant mood, intact, attention, good sleep, intact memory, and normal speech (C3F at 38 and 46). Thoughts were appropriate and hallucinations were denied (C3F at 38, 46 and 56). When seen on February 5, 2021, [Plaintiff] was starting new job as a security guard (C3F at 14). In March 2021, [Plaintiff]'s boyfriend surprised her with a new home (C3F at 19).

When seen on May 27, 2021, [Plaintiff] was keeping a positive mindset, helping care for a nephew, and taking medications as prescribed which were helping much (C8F at 9). When seen on September 28, 2021, [Plaintiff] was without issue/problem, and doing well (C8F at 15).

Evaluation on November 23, 2021 revealed minimal symptoms (C8F at 3-4). At that time, [Plaintiff] was staying busy, feeling better mentally, and happy with her living arrangement (C8F at 24 and 50).

Findings on evaluation throughout 2022 revealed no significant change (C8F). When seen on January 9, 2022, mood and compliance were good (C8F at 27). When seen on February 17, 2022, mood, sleep and appetite were stable (C8F at 30). [Plaintiff] was living with her significant other who was supporting her (C8F at 33). She had recently moved to new apartment that she liked better (id at 33). When seen on September 27, 2022, [Plaintiff] was without new needs or concerns (C8F at 42). When seen on October 5, 2022, [Plaintiff] was living with her significant other and enjoying her apartment (C8F at 58). Activities of daily living evaluation at that time revealed absent or minimal symptoms (id at 54).

(Id. at PageID 41-42.) ALJ Heath concluded that Plaintiff's "severe medically determinable impairments cause limitations[;] however[,] the record fails to show limitations greater than those set forth in the [RFC] herein above." (Id. at PageID 42.) She added that "[w]hile it is reasonable to expect [Plaintiff] would have some

- 10 -

limitation in daily activities because of her impairments and resultant pain, no doctor has advised [Plaintiff] no[t] to work." (Id. at PageID 42.)

ALJ Heath next described Plaintiff's diabetes as "uncomplicated." (Id.) She explained that Plaintiff "has not required emergency department treatment or hospitalization for uncontrolled diabetes mellitus. She has not been diagnosed with neuropathy, acidosis or retinitis proliferans." (Id.) ALJ Heath also found that "[t]he record fails to show objective evidence of kidney disease. [Plaintiff] has not been diagnosed with ulcers that do not heal or required amputation of any appendage." (Id.)

Regarding Plaintiff's mental impairments, ALJ Heath found that "the record shows no evidence of ongoing hallucinations, delusions, obsessions, or suicidal/homicidal ideation." (Id.) she added that "[t]he record is absent any decompensating events or need for inpatient treatment. Rather, the record shows treatment is adequate in controlling symptoms without the need for intensive or inpatient treatment. Moreover, treatment notes show generally stable findings throughout the period at issue." (Id.)

ALJ Heath also reviewed Plaintiff's daily activities. She wrote:

> Despite impairments, the record shows [Plaintiff] has been able to take custody of her 16-year-old nephew and apply as a foster parent. She can live with family and a boyfriend. She has been able to apply for a job and attend orientation for said job. She has been able to

> manage her medications independently, attend doctor
> appointments as scheduled, and manage the custody of her
> 16-year-old nephew. The medical record shows
> intelligence is average, memory is intact, and thoughts
> are generally without obsessions or delusions. She can
> prepare holiday meals, shop in stores with her
> boyfriend, and spend time helping her mother care for a
> nephew. Function report shows [Plaintiff] can walk 1.5
> miles, pay bills, shop in stores, and drive (C3E).
> Hearing testimony shows [Plaintiff] has a friend who
> takes her places. She testified she manages her own
> personal care and meditates with music.

(Id.)

ALJ Heath concluded that "[t]he aforementioned activities and

findings are inconsistent with [Plaintiff]'s allegations of

incapacitating pain and limitation. Rather, they are consistent

with an ability to perform a wide range of sedentary work

activities, as set forth in the [RFC] above." (Id.) While Plaintiff

has impairments, ALJ Heath found that "the clinical findings

demonstrating these impairments fail to disclose any organic

abnormality capable of producing the pain and limitation of

incapacitating proportions as alleged." (Id. at PageID 43.)

ALJ Heath also compared Plaintiff's testimony to the medical

records.

> While [Plaintiff] testified she is disabled because she
> cannot keep up, the record shows she performs a wide
> range of activities, including care of a minor nephew.
> While she testified she gets dizzy and has motion
> sickness, she repeatedly denied these symptoms when
> seen. While she testified her joints hurt and she has
> excruciating pain, she sees no specialist on an ongoing
> basis for any joint or spine related concern. While she
> contends mental health related concerns, she testified
> she does not get mental health treatment. While she

> testified it was transportation related, she was given
> transportation assistance, which she denied needing (C8F
> at 28 and 30). She also testified she has a friend who
> takes her places.

(Id.) ALJ Heath concluded that Plaintiff's "allegations and subjective symptoms are not fully consistent with the medical and other evidence of record." (Id.)

ALJ Heath then discussed the medical opinions and prior administrative medical findings. She explained that "[t]he State agency consultant initial opinions are well supported by the overall record and found persuasive." (Id.) She explained that "[t]heir findings are supported by the objective medical evidence, internally consistent, and technically correct. There is no evidence of a new impairment or worsening of any previously documented impairment. Evidence received subsequent to their determinations offers additional support for their assessment." (Id.)

Discussing the state agency opinions on reconsideration, ALJ Heath found them "partially persuasive." (Id.) She explained that "[t]he record supports their medical opinion that [Plaintiff]'s physical impairments limit her to light work," but that "[t]he record does not support their psychological opinion that [Plaintiff]'s mental impairments cause no more than mild limitations." (Id.) She found that "the record shows generally stable mental health findings with treatment," but "[n]onetheless,

- 13 -

it is reasonable to expect that work above the simple and detailed
level would exacerbate mental health related signs and symptoms."
(Id.)

ALJ Heath also found that "Dr. Gardner's March 2023 opinion
is unpersuasive, as it is not well supported by his findings on
examination or the overall record." (Id.) She wrote:

> While Dr. Gardner found [Plaintiff] able to lift/carry
> 10 pounds frequently, his findings revealed no upper
> extremity abnormality (id at 2). While tenderness was
> about the knees, the overall record shows no related
> abnormality. While he found [Plaintiff] able stand/walk
> 3-4 hours total in an 8-hour workday, his findings
> revealed no related neurologic deficits. The record
> shows [Plaintiff] can walk 1.5 miles, suggesting no
> significant limitation regarding prolonged
> standing/walking. While he found [Plaintiff] limited in
> posturals, the record contains no diagnostic studies as
> of February 2020 that support any postural limits. The
> record shows [Plaintiff] can drive, cook, shop, ride in
> a car, and care for a minor nephew, consistent with no
> postural limitations.

(Id.)

Finally, at the third step, ALJ Heath considered the Social
Security Administration's Acquiescence Rulings ("AR") 98-3(6) and
98-4(6) and their effect on Plaintiff's prior denied application.
She wrote:

> The final prior [ALJ] decision was made on February 28,
> 2020 (C1A). Under these AR, the undersigned may not make
> a different finding in adjudicating a subsequent
> disability claim with an unadjudicated period arising
> under the same title of the Act as the prior claim unless
> new and additional evidence or changed circumstances
> provide a basis for a different finding. Regarding
> mental impairment related limitations, the undersigned
> finds new and material evidence warrants new findings.

- 14 -

> Concerning physical impairments, the record contains no new evidence or changed circumstances that warrant a change in the February 28, 2020 [ALJ] findings. Thus, the undersigned adopts them.

(Id. at PageID 43-44.) ALJ Heath concluded:

> the above [RFC] assessment is supported by the totality of the lay and medical evidence. There is no treating or examining opinion finding [Plaintiff] disabled. Treatment shows generally adequate symptom relief without the need for more than routine and conservative treatment. As such, the undersigned finds [Plaintiff] has been capable of performing work within the functional parameters of this [RFC] assessment at all times relevant to this case.

(Id. at PageID 44.)

At the fourth step, ALJ Heath found that Plaintiff had no past relevant work. (Id.) At the fifth step, ALJ Heath found that, based on Plaintiff's age, education, work experience, and RFC, that there are jobs that exist in significant numbers in the national economy that she could perform. (Id.) She found that Plaintiff was 17 years old on the alleged disability onset date; that she had limited education; and that the transferability of job skills was not an issue. (Id.) Relying on the testimony of the vocational expert Dawn Bergren, ALJ Heath found that Plaintiff could perform the jobs "shipping/receiving weigher," "laundry folder," and "small parts assembler," for which there were 17,000, 65,000, and 176,000 jobs nationwide, respectively. (Id. at PageID 45.) Accordingly, ALJ Heath found that Plaintiff was not disabled. (Id.)

- 15 -

Plaintiff now seeks judicial review of ALJ Heath's decision. On appeal, she argues that ALJ Heath failed to articulate consistency and supportability factors under 20 C.F.R. § 404.1520c when evaluating the medical opinion and prior administrative medical opinion evidence, (ECF No. 15 at PageID 806-14); that ALJ Heath's step-two impairment finding was unsupported, (Id. at PageID 814); that ALJ Heath's consideration of AR 98-3(6) and AR 98-4(6) was incorrect, (Id. at PageID 814-15); and that ALJ Heath did not evaluate Plaintiff's obesity as required by Social Security Ruling 19-2p, (Id. at PageID 815).

## II.  ANALYSIS

### A.  Standard of Review

Under 42 U.S.C. § 405(g), a claimant may obtain judicial review of any final decision made by the Commissioner after a hearing to which he or she was a party. "The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). Judicial review of the Commissioner's decision is limited to whether there is substantial evidence to support the decision and whether the Commissioner used the proper legal criteria in making the decision. Id.; Cardew v. Comm'r of Soc. Sec., 896 F.3d 742, 745 (6th Cir. 2018); Cole v. Astrue, 661 F.3d 931, 937 (6th Cir. 2011); Rogers v. Comm'r of

Soc. Sec., 486 F.3d 234, 241 (6th Cir. 2007). Substantial evidence
is more than a scintilla of evidence but less than a preponderance
and is "such relevant evidence as a reasonable mind might accept
as adequate to support a conclusion." Kirk v. Sec'y of Health &
Human Servs., 667 F.2d 524, 535 (6th Cir. 1981) (quoting Richardson
v. Perales, 402 U.S. 389 (1971)).

In determining whether substantial evidence exists, the
reviewing court must examine the evidence in the record as a whole
and "must 'take into account whatever in the record fairly detracts
from its weight.'" Abbott v. Sullivan, 905 F.2d 918, 923 (6th Cir.
1990) (quoting Garner v. Heckler, 745 F.2d 383, 388 (6th Cir.
1984)). If substantial evidence is found to support the
Commissioner's decision, however, the court must affirm that
decision and "may not even inquire whether the record could support
a decision the other way." Barker v. Shalala, 40 F.3d 789, 794
(6th Cir. 1994) (quoting Smith v. Sec'y of Health & Hum. Servs.,
893 F.2d 106, 108 (6th Cir. 1989)). Similarly, the court may not
try the case de novo, resolve conflicts in the evidence, or decide
questions of credibility. Ulman v. Comm'r of Soc. Sec., 693 F.3d
709, 713 (6th Cir. 2012) (citing Bass v. McMahon, 499 F.3d 506,
509 (6th Cir. 2007)). Rather, the Commissioner, not the court, is
charged with the duty to weigh the evidence, to make credibility
determinations, and to resolve material conflicts in the

- 17 -

testimony. Walters v. Comm'r of Soc. Sec., 127 F.3d 525, 528 (6th Cir. 1997); Crum v. Sullivan, 921 F.2d 642, 644 (6th Cir. 1990).

B.    **The Five-Step Analysis**

The Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1). Additionally, section 423(d)(2) of the Act states that:

> An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. For purposes of the preceding sentence (with respect to any individual), "work which exists in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

Id. § 423(d)(2). Under the Act, the claimant bears the ultimate burden of establishing an entitlement to benefits. Oliver v. Comm'r of Soc. Sec., 415 F. App'x 681, 682 (6th Cir. 2011). The initial burden is on the claimant to prove she has a disability as defined by the Act. Siebert v. Comm'r of Soc. Sec., 105 F. App'x 744, 746 (6th Cir. 2004) (citing Walters, 127 F.3d at 529); see also Born v. Sec'y of Health & Hum. Servs., 923 F.2d 1168, 1173 (6th Cir.

1990). If the claimant is able to do so, the burden then shifts to the Commissioner to demonstrate the existence of available employment compatible with the claimant's disability and background. Born, 923 F.2d at 1173; see also Griffith v. Comm'r of Soc. Sec., 582 F. App'x 555, 559 (6th Cir. 2014).

Entitlement to social security benefits is determined by a five-step sequential analysis set forth in the Social Security Regulations. See 20 C.F.R. §§ 404.1520, 416.920. First, the claimant must not be engaged in substantial gainful activity. See 20 C.F.R. §§ 404.1520(b), 416.920(b). Second, a finding must be made that the claimant suffers from a severe impairment. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(5)(ii). In the third step, the ALJ determines whether the impairment meets or equals the severity criteria set forth in the Listing of Impairments contained in the Social Security Regulations. See id. §§ 404.1520(d), 404.1525, 404.1526. If the impairment satisfies the criteria for a listed impairment, the claimant is considered to be disabled. On the other hand, if the claimant's impairment does not meet or equal a listed impairment, the ALJ must undertake the fourth step in the analysis and determine whether the claimant has the RFC to return to any past relevant work. See id. §§ 404.1520(a)(4)(iv), 404.1520(e). If the ALJ determines that the claimant can return to past relevant work, then a finding of "not disabled" must be entered. Id. But if the ALJ finds the claimant unable to perform past relevant work,

then at the fifth step the ALJ must determine whether the claimant can perform other work existing in significant numbers in the national economy. See id. §§ 404.1520(a)(4)(v), 404.1520(g)(1), 416.960(c)(1)-(2). Further review is not necessary if it is determined that an individual is not disabled at any point in this sequential analysis. Id. § 404.1520(a)(4).

## C.   Consistency and Supportability

Plaintiff first argues that ALJ Heath violated the mandatory evaluation criteria of 20 C.F.R. § 404.1520c. (ECF No. 15 at PageID 806-14.) 20 C.F.R. § 404.1520c states in relevant part:

> (a) How we consider medical opinions and prior administrative medical findings. We will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources. When a medical source provides one or more medical opinions or prior administrative medical findings, we will consider those medical opinions or prior administrative medical findings from that medical source together using the factors listed in paragraphs (c)(1) through (c)(5) of this section, as appropriate. The most important factors we consider when we evaluate the persuasiveness of medical opinions and prior administrative medical findings are supportability (paragraph (c)(1) of this section) and consistency (paragraph (c)(2) of this section). We will articulate how we considered the medical opinions and prior administrative medical findings in your claim according to paragraph (b) of this section.
>
> (b) How we articulate our consideration of medical opinions and prior administrative medical findings. We will articulate in our determination or decision how persuasive we find all of the medical opinions and all of the prior administrative medical findings in your case record. Our articulation requirements are as follows:

. . .

(2) Most important factors. The factors of supportability (paragraph (c)(1) of this section) and consistency (paragraph (c)(2) of this section) are the most important factors we consider when we determine how persuasive we find a medical source's medical opinions or prior administrative medical findings to be. Therefore, we will explain how we considered the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings in your determination or decision. We may, but are not required to, explain how we considered the factors in paragraphs (c)(3) through (c)(5) of this section, as appropriate, when we articulate how we consider medical opinions and prior administrative medical findings in your case record.

. . .

(c) Factors. We will consider the following factors when we consider the medical opinion(s) and prior administrative medical finding(s) in your case:

(1) Supportability. The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.

(2) Consistency. The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be.

20 C.F.R. § 404.1520c. Plaintiff argues that ALJ Heath failed to properly explain the supportability and consistency factors for

- 21 -

the prior agency medical determination opinions and Dr. Gardner's opinion. (ECF No. 15 at PageID 810-14.)

### 1.    Prior Agency Medical Determinations

While Plaintiff refers only to "prior agency medical determinations" and does not distinguish between the initial or reconsideration opinions, (id. at PageID 810-11), it appears that Plaintiff challenges only ALJ Heath's discussion of the state agency medical opinions on reconsideration.[4] ALJ Heath wrote: "[t]he State agency opinions offered on reconsideration are partially persuasive (C8A-C9A). The record supports their medical opinion that the claimant's physical impairments limit her to light work." (ECF No. 9 at PageID 43.) Plaintiff argues that ALJ Heath did not articulate any evaluation of the medical opinions. (ECF No. 15 at PageID 810-11.)

Though neither party has addressed this issue, several courts within the Sixth Circuit have applied a harmless error standard where ALJs have failed to articulate consistency or supportability under § 404.1520c. See, e.g., Miller v. Comm'r of Soc. Sec., No. 1:24-CV-378-JPC, 2024 WL 4985903, at *9 (N.D. Ohio Dec. 5, 2024) (citing Riggio v. Comm'r of Soc. Sec., No. 3:22 CV 997, 2023 WL 6225093, at *4 (N.D. Ohio Sept. 26, 2024); Musolff v. Comm'r of

---

[4]The Commissioner argues that Plaintiff is challenging ALJ Heath's discussion of both the initial and reconsideration state agency medical opinions. (ECF No. 17 at PageID 823-26.)

Soc. Sec., No. 1:21-CV-1739, 2022 WL 1571864, at *13 (N.D. Ohio Apr. 27, 2022) (collecting cases), report & recommendation adopted, 2022 WL 1568478 (N.D. Ohio May 17, 2022))(applying a harmless error standard). There are three circumstances where "an ALJ's failure to explain her consideration of the supportability and consistency factors" are harmless error: "(1) the medical opinion is patently deficient, (2) the ALJ adopted the medical opinion or made findings consistent with the opinion, or (3) the goal of the regulation was otherwise met." Sonnie W. v. Comm'r of Soc. Sec. Admin., No. 2:22-CV-04172, 2024 WL 1132227, at *10 (S.D. Ohio Mar. 15, 2024) (citing Wilson v. Comm'r of Soc. Sec., 378 F.3d 541, 547 (6th Cir. 2004)).

Under the second prong, the court independently finds that ALJ Heath's medical findings are consistent with that of Dr. Glenda Knox-Carter, the reviewing physician at the reconsideration level. Both ALJ Heath and Dr. Knox-Carter found that Plaintiff had an RFC for light work. (ECF No. 9 at PageID 39, 142.) Moreover, ALJ Heath found the state agency opinion only partially persuasive because she disagreed with the psychological opinion of Dr. Fawz Schoup, (see id. at PageID 39, 138-39), which ALJ Heath more fully discussed and Plaintiff does not appear to challenge. Thus, ALJ Heath's failure to discuss consistency and supportability as to the medical opinion is harmless error. Miller, 2024 WL 4985903, at *9 (finding that ALJ's failure to discuss consistency and

supportability was harmless error because the ALJ's findings were either consistent or more restrictive than the reviewing state agency consulting physician).

    *2.  Dr. Gardner*

    ALJ Heath found that Dr. Gardner's opinion was not persuasive, explaining:

> it is not well supported by his findings on examination or the overall record. While Dr. Gardner found [Plaintiff] able to lift/carry 10 pounds frequently, his findings revealed no upper extremity abnormality (id at 2). While tenderness was about the knees, the overall record shows no related abnormality. While he found [Plaintiff] able stand/walk 3-4 hours total in an 8-hour workday, his findings revealed no related neurologic deficits. The record shows [Plaintiff] can walk 1.5 miles, suggesting no significant limitation regarding prolonged standing/walking. While he found [Plaintiff] limited in posturals, the record contains no diagnostic studies as of February 2020 that support any postural limits. The record shows [Plaintiff] can drive, cook, shop, ride in a car, and care for a minor nephew, consistent with no postural limitations.

(ECF No. 9 at PageID 43.) Plaintiff argues that ALJ Heath did not discuss consistency or supportability.

    At the outset, ALJs are not required to expressly use the words "supportability" or "consistency." See, e.g., Christopher B. v. O'Malley, No. 123CV00028GNSLLK, 2024 WL 112499, at *2 (W.D. Ky. Jan. 10, 2024) (citing Darling v. Kijakazi, No. 22-35594, 2023 WL 4103935, at *2 (9th Cir. June 21, 2023); Adams v. Kijakazi, No. 1:21CV2199, 2023 WL 2347368, at *10 (N.D. Ohio Mar. 3, 2023); Ebeling v. Comm'r of Soc. Sec., No. 5:21-CV-00115-TBR-LLK, 2022 WL

3006209, at *3 (W.D. Ky. July 8, 2022)) (adopting report and recommendation of the magistrate judge). ALJ Heath's opinion indicates consideration of both factors. She highlights instances where Dr. Gardner's conclusions were not supported by his own examination findings, including his conclusion that Plaintiff had lifting limitations without reporting any "upper extremity abnormality," and his conclusion that Plaintiff had standing/walking limitations while not finding any "related neurologic deficits." (ECF No. 9 at PageID 43.) ALJ Heath also highlighted instances where Dr. Gardner's conclusions were inconsistent with the medical record, including that Dr. Gardner reported Plaintiff had postural limitations despite the medical record not containing any diagnostic studies to that effect and that Plaintiff's daily activities also suggested no postural limitations. (Id.) Thus, the court finds that ALJ Heath adequately addressed supportability and consistency when discussing Dr. Gardner's opinion.

**D.   Step Two Impairment Findings**

Plaintiff also challenges ALJ Heath's step-two impairment findings. (ECF No. 15 at PageID 814.) She argues that ALJ Heath erred by not finding that Plaintiff's alleged joint and back problems were severe impairments. (Id.) The Commissioner argues that this is legally irrelevant. (ECF No. 17 at PageID 830.) Indeed, "'[t]he fact that some of [a claimant's] impairments were

- 25 -

not deemed to be severe at step two is . . . legally irrelevant' where other impairments are found to be severe." Emard v. Comm'r of Soc. Sec., 953 F.3d 844, 852 (6th Cir. 2020) (quoting Anthony v. Astrue, 266 F. App'x 451, 457 (6th Cir. 2008) (alterations in original). "An erroneous finding of nonseverity at step two is therefore harmless where the ALJ properly considers nonsevere impairments at later steps." Id. (citing Maziarz v. Sec'y of Health & Hum. Servs., 837 F.2d 240, 244 (6th Cir. 1987); Gray v. Comm'r of Soc. Sec. Admin., 365 F. App'x 60, 61 (9th Cir. 2010)). In her RFC formulation, ALJ Heath specifically considered Plaintiff's alleged back and joint pain and found that her allegations regarding their impact on her ability to work were not persuasive. (ECF No. 9 at PageID 40.) Because ALJ Heath considered these non-severe impairments at a later step, the court finds that Plaintiff's argument is legally irrelevant. Emard, 953 F.3d at 844.

**E.    Application of AR 98-3(6) and AR 98-4(6)**

Plaintiff next argues that ALJ Heath incorrectly applied AR 98-3(6) and AR 98-4(6) in adopting the findings of the 2020 ALJ Decision as to Plaintiff's RFC. (ECF No. 15 at PageID 814-15.) AR 98-3(6) and AR 98-4(6) were issued in response to the Sixth Circuit's decision in Drummond v. Commissioner of Social Security, which invoked the principles of *res judicata* to hold that "where the Commissioner has made a final decision concerning a claimant's

entitlement to benefits, the Commissioner is bound by this determination absent changed circumstances." 126 F.3d 837, 842 (6th Cir. 1997). Before Drummond, SSA policy was that, "when adjudicating a subsequent disability claim involving an unadjudicated period, SSA considers the facts and issues de novo in determining disability with respect to the unadjudicated period." AR 98-4(6), 1998 WL 274052, at *29773. AR 98-3(6) and AR 98-4(6) instead instructed that, when adjudicating a subsequent disability claim with an unadjudicated period, an ALJ must adopt a prior decision's findings of fact with respect to a claimant's past relevant work demand, date of birth, education, work experience, and RFC, "unless there is new and material evidence relating to such a finding or there has been a change in the law, regulations or rulings affecting the finding or the method for arriving at the finding." AR 98-3(6), 1998 WL 283901, at *3; AR 98-4(6), 63 FR 29771-01, 1998 WL 274052 at *29773.[5]

---

[5]The court notes that, as the Commissioner correctly highlights, the Sixth Circuit revisited the Drummond decision in Earley v. Commissioner of Social Security, cautioning against too "broad [a] reading" of Drummond's reference to "principles of res judicata." 893 F.3d 929, 933-34 (6th Cir. 2018). In response to Earley, the SSA rescinded AR 98-3(6) and AR 98-4(6) effective December 2, 2024. See SSA Acquiescence Ruling 24-1(6), 89 Fed. Reg. 92992-02, 2024 WL 4870750 (rescinding ARs 98-3(6) and 98-4(6)). Because ALJ Heath evaluated Plaintiff's claim before the ARs were rescinded, however, the court reviews ALJ Heath's findings against the prior guidance.

Plaintiff argues that ALJ Heath's adoption of the 2020 decision's RFC findings was improper because Plaintiff's interim back and myalgia/arthralgia diagnoses presented "new information" warranting modification of the prior RFC finding. (ECF No. 15 at PageID 814-15.) In response, the Commissioner argues that ALJ Heath did give a "careful 'fresh look' of the medical developments since Plaintiff's previous decision in early 2020." (ECF No. 17 at PageID 832.) According to the Commissioner, ALJ Heath ultimately chose to adopt the previous ALJ's finding after considering the updated treatment record and concluding that the evidence did not warrant a departure. (Id.)

The court finds that there is substantial evidence to support ALJ Heath's adoption of the previous RCF findings under AR 98-3(6) and AR 98-4(6)'s criteria. Before announcing her decision, ALJ Heath thoroughly reviewed Plaintiff's medical records and history, including several examinations occurring in 2021, 2022, and 2023 after Plaintiff's prior ALJ decision was rendered. (ECF No. 9 at PageID 41-43.) While ALJ Heath found that these records did present "new and material evidence" warranting new findings regarding Plaintiff's mental impairments, ALJ Heath concluded that they did not present evidence of changed circumstances regarding Plaintiff's physical impairments. (Id. at PageID 44.) Thus, ALJ Heath adopted the prior ALJ's RFC determination because she did not find a basis to stray from that previous finding. The court

accordingly finds that ALJ Heath's determination was supported by substantial evidence and affirms her decision on that basis.

**F.   Obesity Limitations**

Plaintiff lastly argues that ALJ Heath "failed to evaluate the additional limitation imposed by Plaintiff's obesity" in accordance with Social Security Ruling ("SSR") 19-2p. (ECF No. 15 at PageID 815.) SSR 19-2p requires an ALJ to "consider the limiting effects of obesity when assessing a person's RFC." SSR 19-2p, 2019 WL 2374244, at *4 (May 20, 2019). The Ruling notes that "the combined effects of obesity with another impairment(s) may be greater than the effects of each of the impairments considered separately" and requires ALJs to "explain how [they] reached [their] conclusion on whether obesity causes any limitations." Id. Where a plaintiff disagrees that the analysis of obesity is adequate, they must further meet the "burden of showing specifically how [their] obesity, in combination with other impairments, limited [their] ability to a degree inconsistent with the ALJ's RFC." Lumpkin v. Comm'r of Soc. Sec., No. 1:20-cv-01849-DAP, 2021 WL 5828692, at *7 (N.D. Ohio Oct. 6, 2021), report and recommendation adopted, No. 1:20-cv-1849, 2021 WL 5987607 (N.D. Ohio Oct. 27, 2021).

The court finds that Plaintiff has not met this burden. Plaintiff contends that "[h]ad the ALJ actually evaluated Plaintiff's obesity, it would have resulted in a residual

- 29 -

functional capacity finding of less than sedentary work[.]" (ECF No. 15 at PageID 815.) However, in support of that argument, Plaintiff offers only the broad assertion that it is "obviously impossible for a diabetic individual of Plaintiff's weight" to perform the full range of light work. (ECF No. 15 at PageID 815.) The court finds that this argument is not sufficient to meet Plaintiff's burden of identifying specific symptoms that her obesity exacerbated even further than ALJ Heath found. See Lumpkin, 2021 WL 5987607, at *7 (finding burden was not met where claimant "d[id] not explain what more the ALJ was required to do or point to any objective evidence indicating" that claimant's obesity imposed additional limitations). Because of this, the court finds no error and affirms ALJ Heath's RFC determination accordingly.

### III. CONCLUSION

For the above reasons, the decision of the Commissioner is AFFIRMED.

IT IS SO ORDERED.

s/Tu M. Pham
TU M. PHAM
Chief United States Magistrate Judge

March 31, 2025
Date